IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOSEPH J. ATCHERIAN, on his own behalf and as the Personal Representative of the ESTATE OF MARTHA JO ATCHERIAN, Deceased; and MAX YUNAK, Sr., as the Personal Representative for the ESTATE OF PAULA KAREN YUNAK,<br><br>          Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | Case No. 3:12-cv-0211-RRB<br><br>**Order Re: Motion in Limine Regarding Discretionary Function Exception**<br><br>**Docket 26** |

## I. Introduction

This is a wrongful death matter involving the estates of Paula Yunak and her infant daughter, Martha Jo Atcherian. The estates are represented by the personal representatives, Max Yunak and Joseph Atcherian.[1] Joseph Atcherian also brings this case on his own behalf, as the husband and father of the decedents. The case is brought pursuant to the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 2674, following the final decision by Indian Health Services denying an administrative claim. Docket 1 at 2.

---

[1] For the sake of clarity, the first names of the decedents will be used throughout this order, rather than last names or names of personal representatives of the estates.

Plaintiffs allege negligence of employees of the Yukon Delta Regional Hospital ("YKDRH"), which is operated by the Yukon Kuskokwim Health Corporation (YKHC), a contracting entity of the Indian Health Services. Accordingly, health care provider employees at YKDRH are employees of the United States for purposes of liability under the FTCA. The defendant is, therefore, the United States of America.

Plaintiffs allege four causes of action: 1) Negligence, in the form of breach of the standard of medical care; 2) Failure to provide informed consent; 3) Wrongful death and survival claim (Paula); 4) Wrongful death and survival claim (Martha). Docket 1. This motion pertains only to Count 1, Negligence. With respect to Count 1, Plaintiffs allege that YKDRH medical personnel breached their obligation to provide medical care of a reasonable kind that conforms to the accepted standard of care by: failure to timely diagnose Paula's serious medical condition, discharge of Paula from the hospital after assessing her with a serious medical condition, failure to ensure there was adequate nursing staff on duty in the obstetrics ("OB") department, failure to promptly induce labor, failure to act with the necessary degree of urgency to ensure Paula was delivered by a skilled medical team, and failure to promptly provide medical diagnostic tests. Docket 1 at 6.

## II. Facts

The facts are largely undisputed. On November 9, 2009, Paula presented to the YKDRH for a prenatal visit. She was over 38 weeks pregnant. Lab work and physical complaints of shortness of breath resulted in Paula's transfer to OB triage, where she was diagnosed with "pregnancy induced hypertension versus pre-eclampsia." Dr. Mary Boegel, a *Locum tenens* family practice physician for YKHC, was concerned that Paula had "severe pre-eclampsia" and felt that Paula needed close

monitoring and "induction as soon as possible." Docket 46-2. But Dr. David Compton, an OB/Gyn, sent Paula home at 3:55 p.m. with instructions to call the hospital at 7:30 the next morning for induction of labor. Docket 1 at 3-4.

It is undisputed that induction was not available on November 9, 2010. Defendant explains that due to the size of the hospital in Bethel, Alaska, only one patient may be induced at a time. There was already a patient being induced when Paula arrived at the OB triage on November 9, 2010. Furthermore, the OB ward was at full capacity. Docket 27 at 4. Plaintiffs' Complaint alleges that induction was not available "due to inadequate nurse staffing." Docket 1 at 4.

Paula returned to the hospital at 1:45 a.m. on November 10th with increased shortness of breath. Docket 1 at 4. At 2:30 a.m. a chest x-ray was taken which showed "interstitial edema consistent with pulmonary edema and organ failure." Docket 1 at 5. At 7:15 a.m., Paula was loaded into the LifeMed aircraft to be flown to Anchorage for induction of labor. Fifteen minutes later she went into cardiac and respiratory arrest, the flight turned around, and she was brought back to the emergency room in Bethel. At 8:16 a.m., infant Martha was delivered by Cesarian section. Paula was pronounced dead five minutes later. Infant Martha was transferred to Alaska Native Medical Center in Anchorage the same day, and died two days later. *Id.*

### III. Motion in Limine

Defendant seeks to "exclude any expert opinion that the government had a duty to immediately deliver Yunak on November 9, 2010, as a basis for liability." Docket 27 at 11-12.

### A. The Discretionary Function Exception

The FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of its employees acting within the scope of their employment. *Gager v. United States*, 149 F.3d 918, 920 (9th Cir. 1998). The exception provides that no liability shall lie for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Conduct is not discretionary where a federal statute, regulation, or policy specifically prescribes a course of action for the employee or agency to follow. *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011). The Government suggests that the discretionary function exception shields it from any liability for failure to induce pursuant to the hospital's policy, or failure to staff or have facilities available to the Plaintiff when she presented for treatment.

### B. The Experts

Plaintiffs' experts, two obstetrics and gynecology physicians, both opine that based on Paula's symptoms, the treating physician should have taken an x-ray, that the x-ray would have shown pulmonary edema, and that this additional finding would have changed the diagnosis from mild preeclampsia to severe preeclampsia. They further opined that the only appropriate treatment for severe preeclampsia at 38 weeks and 6 days is immediate delivery. Docket 27-4 (Opinion of Dr. Matthew Brennan); Docket 27-5 (Opinion of Dr. Goldberg). Dr Brennan further opined that "there is no role for outpatient management of severe preeclampsia at term," and that Paula "should have been sent at that time to the [labor and delivery] unit for immediate delivery. Due to inadequate

nursing availability at that time she was instead sent home and asked to return in the morning for induction. . . Her death and the death of her child could have been prevented if she would have been admitted and delivered when she presented with severe preeclampsia on 11/09/2010." Docket 27-4.

**C. Analysis**

The parties generally agree that Plaintiffs cannot recover damages against the government for failure to induce and deliver Paula at the Bethel hospital, as the level of staffing and available facilities are economic decisions protected by the discretionary function exception. Docket 55 at 4. Plaintiffs concede that "nursing staffing had nothing to do with [their] claim." Docket 46 at 9. Furthermore, the parties agree that the claims of wrongful diagnosis and other medical malpractice claims are *not* protected by the discretionary function exception. Docket 46 at 15; Docket 55 at 2.

Defendant concedes that had Paula presented with *severe* preeclampsia, rather than *mild* preeclampsia, the treatment policy in Bethel is to medevac to Anchorage. Defendant's concern is that the expert opinions that Paula should have been "immediately admitted for delivery" should not be admitted because the government was incapable of meeting such a standard, and that failure is protected by the discretionary function exception. Docket 27 at 10-11.

The motion currently before the Court addresses a very narrow issue: Whether this Court should "exclude any expert opinion that the government had a duty to immediately deliver Yunak on November 9, 2010, as a basis for liability." Docket 27 at 11-12. Indeed, both experts have opined that the only appropriate treatment for severe preeclampsia at late pregnancy is "immediate

delivery."[2] The hospital's inability to provide "immediate delivery" on site for discretionary reasons does not change the fact that expert opinions regarding the standard of care call for "immediate delivery." What constitutes "immediate delivery" in Bethel is for the parties the define. The parties are in agreement that the protocol for "immediate delivery" with staff and/or bed shortages in Bethel would have included prompt medevac to Anchorage. This FTCA matter will be a bench trial, not a jury trial. The Court is confident that it can discern the hospital's responsibility under the "immediate delivery" standard of care, as explained by expert testimony and as executed pursuant to hospital policy.

Accordingly, the Motion in Limine at **Docket 26** is **DENIED**. However, as the parties appear to agree that the level of nursing staff is not a basis for liability, the Court will *sua sponte* DISMISS the portion of the First Cause of Action which seeks liability for "failing to ensure there was adequate nursing staff on duty in the obstetrics department." Docket 1, ¶ 35.

**IT IS SO ORDERED** this 13th day of November, 2014.

S/RALPH R. BEISTLINE<br>UNITED STATES DISTRICT JUDGE

---

[2] With respect to the expert reference to a nursing staff shortage, the Court finds that such statement is merely a factual observation, the accuracy of which is not in dispute.