# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOSEPH J. ATCHERIAN, on his own behalf and as the Personal Representative of the ESTATE OF MARTHA JO ATCHERIAN, Deceased; and MAX YUNAK, Sr., as the Personal Representative for the ESTATE OF PAULA KAREN YUNAK,<br><br>          Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | Case No. 3:12-cv-0211-RRB<br><br>**Order Regarding Pending Motions**<br><br>**Docket Nos. 28, 30, 38, 61 & 65** |

This is a wrongful death matter involving the estates of Paula Yunak and her infant daughter, Martha Jo Atcherian. The facts are discussed at length in the Order at Docket 60.

Plaintiffs allege four causes of action: 1) Negligence, in the form of breach of the standard of medical care; 2) Failure to provide informed consent; 3) Wrongful death and survival claim (Paula); and 4) Wrongful death and survival claim (Martha). Docket 1. Pending before the Court are several motions addressed in turn below.

## I. Motion in Limine Regarding Qualification of Plaintiffs' Experts and Failure to Produce Opinion on Informed Consent (Docket 28)

The Government has filed a Motion in Limine regarding qualification of Plaintiffs' experts and failure to produce rebuttal opinion on the issue of whether cardiomyopathy was the case of death. Specifically, the Government argues that: 1) Plaintiffs' experts are OB/GYNs, not family practice physicians, and therefore under Alaska law are not able to provide opinions regarding the care provided by providers of a different specialty; and 2) Plaintiffs' experts did not rebut any of the government expert opinions regarding cardiomyopathy, and therefore should not be permitted to testify regarding cardiomyopathy.

The Government's first argument is unpersuasive. The physicians in this matter were family practice physicians treating a pregnant woman. An OB/GYN is clearly qualified to testify as to the standard of care in this matter. The Court also finds unpersuasive the argument that the remote location of Bethel is relevant to the standard of care. While it may be relevant to the *methodology* and *practicality* of implementing the standard of care, (such as requiring a medevac to a hospital that can provide the needed services), the standard of care itself is not lower (or different) merely due to the location of the patient.

With respect to the Government's second argument regarding testimony of Plaintiff's experts at trial, the pleadings suggest that the Government did not raise its cardiomyopathy defense until 2014, four years after the incident, and two years after this lawsuit was filed. Nothing appears to preclude Plaintiffs' experts from rebutting what is contained in the Government's expert reports, and no prejudice will occur from permitting such testimony.

In light of the foregoing, the Motion at **Docket 28** is **DENIED.**

### II.  Motion to Dismiss the Claim Regarding Informed Consent (Docket 30)

Plaintiffs' second cause of action alleges that there was a "duty to disclose all significant medical information that they possessed or reasonably should have possessed that is material to form an intelligent decision by a patient on whether to leave an emergency care hospital when experiencing and continuing to experience pre-eclampsia."  In other words, Plaintiffs seek relief for failure to provide informed consent.  The Government moves to dismiss this cause of action, complaining that Plaintiffs have not provided an expert opinion stating whether there is such a duty, and if so, the extent of the duty.  Docket 31 at 2.

The Court observes that in order to prevail on the informed consent cause of action, Plaintiffs will necessarily need to prevail on at least one other cause of action in their Complaint.  At that juncture, whether or not Paula Yunak gave informed consent becomes relevant.  The cause of death in this matter remains a question of fact.  Until that question is resolved, whether or not she should have been provided with additional information to give informed consent to leave the hospital - and whether the hospital even owed such a duty- is unknown.

Accordingly, the Motion to Dismiss at **Docket 30** is **DENIED WITHOUT PREJUDICE.**

### III. Plaintiffs' Motion for Partial Summary Judgment (Cardiomyopathy Defense) (Docket 38)

Whether the decedent suffered from severe pre-eclampsia or, rather, peripartum cardiomyopathy is a critical determination in this matter.  At trial, the expert witnesses will be

able to explain to the Court, with a reasonable degree of medical certainty, the cause of death in this matter. The Court will weigh the evidence and the credibility of experts and render its opinion. Accordingly, the Plaintiffs' Motion for Partial Summary Judgment on the Federal Government's cardiomyopathy defense at **Docket 38** is **DENIED.**

### IV. Motion to Strike (Docket 61) and Motion for Judicial Notice of Medical Treatise (Docket 65)

The excerpt of the medical treatise at issue in the motions at docket numbers 61 & 65 shall be admissible at trial if Plaintiffs submit it in accordance with Federal Rule of Evidence 803(18). The Motion to Strike Additional Information at **Docket 61** is **DENIED WITHOUT PREJUDICE.** The Motion for Judicial Notice at **Docket 65** is also **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED** this 23rd day of January, 2015.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE